IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSE BROWN, | : | No. 3:25cv588 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| LAUREL HARRY, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Jesse Brown ("Brown"), an inmate confined at the State Correctional Institution, Camp Hill, Pennsylvania ("SCI-Camp Hill"), initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Brown has paid the requisite filing fee. (Doc. 7).

Before the court is defendants' motion (Doc. 15) to screen the complaint and extend the deadline to respond to the complaint. The court will grant defendants' motion and screen the complaint pursuant to 28 U.S.C. § 1915A.

I.   **Factual Background**

Brown's complaint names the following defendants: Commissioner Laurel Harry, Secretary Michael Wenerowicz, Superintendent Gourley, Correctional Officer Jennifer McClelland, Unit Manager Spieles, and Psychological Services Specialist ("PSS") Kalsky. (Doc. 1).

The complaint includes the following factual allegations:

- On December 20, 2023, Brown received misconduct number D853483, while housed at SCI-Albion, charging him with assault and refusing to obey an order (id. ¶¶ 12-13). As a result, he was sanctioned with time in disciplinary custody (id. ¶ 13).

- On or about January 8, 2024, Brown was transferred to SCI-Rockview and served his disciplinary time in the Restricted Housing Unit ("RHU") (id. ¶¶ 14-15).

- At SCI-Rockview, defendants Harry and Wenerowicz approved Brown's placement on the Restricted Release List ("RRL") (id. ¶¶ 16-17, 21-23).

- On October 2, 2024, defendants Harry, Wenerowicz, and Gourley "c[a]me together to enter[ ]" Brown in SCI-Camp Hill's Intensive Management Unit ("IMU") (id. ¶ 18).

- The IMU is a four-year program (id. ¶ 19).

- Brown is being held in SCI-Camp Hill's IMU "against [his] will" (id. ¶ 20).

- Brown's placement in the IMU is inhumane and has caused mental distress, lack of sleep, paranoia, anxiety, and anger (id. ¶¶ 20-22).

- All defendants—Harry, Wenerowicz, Gourley, McClelland, Spieles, and Kalsky—are aware of the effects of long-term solitary confinement on mental health patients (id. ¶¶ 26, 28).

- The conditions of Brown's confinement are inadequate—including poor sanitation, plumbing, bedding, ventilation, laundry services, showers, and hygiene products; excessive noise; bright light; inadequate exercise; inadequate social interactions; exposure to rodents, exposure to oleoresin capsicum ("OC") spray; inadequate education and rehabilitation programs; limited opportunity for activities outside his cell; limited access to the law library; inadequate safety features in his cell; placement in handcuffs and shackles; he is subjected to strip searches; and kept in a cell with sealed doors (id. ¶¶ 26, 31).

Brown contends that the IMU program violates his constitutional rights under both the Eighth and Fourteenth Amendments. He also alleges a violation of his First Amendment rights. For relief, Brown seeks declaratory and injunctive relief, as well as monetary damages. (Id. ¶¶ 36-41).

## II. Legal Standard

Under 28 U.S.C. § 1915A, the court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); James v. Pa. Dep't of Corr., 230 F. App'x 195, 197 (3d Cir. 2007) (not precedential). The court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Mitchell v. Dodrill, 696 F.Supp.2d 454, 471 (M.D. Pa. 2010). In this case, because Brown is a prisoner suing governmental employees and has paid the filing fee, 28 U.S.C. § 1915A applies. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mitchell, 696 F. Supp. 2d at 471.

Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be

drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the...claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the

4

court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016) (citing Phillips, 515 F.3d at 233-34). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting FED. R. CIV. P. 8(a)(2)); see also Phillips, 515 F.3d at 233.

Finally, courts must liberally construe pleadings that are filed *pro se*. Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less

5

stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## III.  Discussion

### A.   Eighth Amendment Claim against Harry, Wenerowicz, and Gourley

Brown appears to allege that defendants Harry, Wenerowicz, and Gourley subjected him to cruel and unusual punishment in violation of the Eighth Amendment by placing him in the IMU. (Doc. 1 ¶¶ 16-18, 21-23). Because he is in the IMU, Brown claims he is housed in conditions that constitute solitary confinement. (Id. ¶ 22). Although not entirely clear, it appears that Brown is primarily challenging his IMU placement since his arrival at SCI-Camp Hill on October 2, 2024. (Id. ¶ 31). Brown contends that the conditions of confinement in the IMU violate the Eighth Amendment's prohibition against cruel and unusual punishment. (Id. ¶¶ 27, 29).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. The United States Supreme Court has "interpreted this prohibition...to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'" Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015)

6

(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To succeed, a plaintiff must satisfy both an objective and a subjective element of the claim. First, he must establish that the defendants' conduct was "objectively harmful enough or sufficiently serious to violate the Constitution." Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) (internal citations omitted). To meet the subjective component of this claim, a plaintiff must show that the defendants were deliberately indifferent to those conditions by acting with a reckless disregard of a known risk of harm. Wilson v. Seiter, 501 U.S. 294, 298-303 (1991); Watson v. Sec'y Penn. Dep't of Corr., 567 F. App'x 75, 79 (3d Cir. 2014) (not precedential). In other words, "the [prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837.

There is no question that unduly prolonged incarceration in solitary confinement "can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity." Palakovic v. Wetzel, 854 F.3d 209, 225-26 (3d Cir. 2017). This is because prolonged solitary confinement may deprive an inmate of such basic human needs as "exercise, sleep, social contact and interaction, and environmental stimulation." Johnston v.

7

Wetzel, 431 F.Supp.3d 666, 678 (W.D. Pa. 2019) (citing Wilson, 501 U.S. at 304).

On the other hand, reasonable periods of isolation "may be a necessary tool of prison discipline." Johnson v. Wetzel, 209 F.Supp.3d 766, 777 (M.D. Pa. 2016) (citing Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)). See also Johnston, 431 F.Supp.3d at 679 (noting that "solitary confinement does not, in itself, violate the Constitution") (internal quotation omitted). In determining whether a particular confinement violates the constitution, courts look to both the duration of the solitary confinement and the unique conditions of that confinement. See Wayne v. Clark, 2022 WL 17993131, at *8 (E.D. Pa. Dec. 29, 2022) (evaluating the "conditions of confinement taken together with the length of [the inmate's] placement"). This is a totality of the circumstances analysis. McClure v. Haste, 820 F. App'x 125, 128 (3d Cir. 2020) (not precedential).

Brown alleges that his IMU placement on October 2, 2024 at SCI-Camp Hill has led to continued solitary confinement, for a period of approximately eight months. (Doc. 1 ¶ 31). As set forth above, Brown alleges that since October 2, 2024, he has been subjected to the following conditions: poor sanitation, plumbing, bedding, ventilation, and laundry services; only being allowed three showers per week; poor hygiene supplies; excessive noise; bright light; inadequate exercise; inadequate social interactions; exposure to rodents;

8

exposure to OC spray; inadequate education and rehabilitation programs; limited opportunity for activities outside his cell; limited access to the law library; inadequate safety features in his cell; placement in handcuffs and shackles; he is subjected to strip searches; and he is kept in a cell with sealed doors. (Id. ¶¶ 20-22, 26, 31). Brown also claims that since his IMU placement, he has suffered from mental distress, lack of sleep, paranoia, anxiety, and anger. (Id. ¶¶ 20-22).

At this point, given the litany of conditions alleged by Brown, and viewing the allegations of the complaint in the light most favorable to Brown, the court concludes that he has set forth sufficient allegations to satisfy the objective prong of an Eighth Amendment conditions of confinement claim against defendants Harry, Wenerowicz, and Gourley.

Whether the specific conduct by defendants Harry, Wenerowicz, and Gourley amounted to deliberate indifference is not plausibly alleged. However, construing Brown's allegations liberally, it appears that defendants Harry, Wenerowicz, and Gourley were involved in the decision to place Brown in the IMU and have been made aware of his allegations of mental and physical harm. (Doc. 1 ¶¶ 16-18, 21-23, 26, 28). Accordingly, the Eighth Amendment conditions of confinement claim against defendants Harry, Wenerowicz, and Gourley is sufficient to proceed.

However, rather than dismiss portions of the original complaint (as discussed below), and allow other portions to proceed, the court will grant Brown leave to file one all-inclusive complaint. The court finds that it would be more efficient to allow Brown to file one all-inclusive complaint, instead of allowing him to add to his complaint in a piecemeal fashion.

B.  Fourteenth Amendment Claim

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall...deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has mandated a two-part analysis of Fourteenth Amendment procedural due process claims. Ingraham v. Wright, 430 U.S. 651, 672 (1977). First, the reviewing court must determine "whether the asserted individual interests are encompassed within the...protection of 'life, liberty or property.'" Id. If a protected interest is implicated, the court must "decide what procedures constitute 'due process of law.'" Id. If no protected interest is implicated, however, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred." Harris v. Hines, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

Although Brown references the Fourteenth Amendment in his complaint, he does not allege any facts to support this claim. (Doc. 1 ¶ 34). Brown does not

allege facts from which the court can determine whether he has a protected liberty or property interest triggering his right to due process or, assuming he has such an interest, whether the process afforded to him comports with constitutional requirements. Given these omissions, this claim will be dismissed, without prejudice and with leave to amend, for failure to state a claim.

C.   First Amendment Claim

Liberally construing the complaint, Brown seems to allege a First Amendment retaliation claim. (Doc. 1 ¶¶ 27, 32). He alleges that "long-term solitary confinement violated the First Amendment." (Id. ¶ 32).

It is well-settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under § 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). Merely alleging the fact of retaliation, however, is insufficient. In order to plausibly allege a retaliation claim, a plaintiff must allege facts that: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered "adverse action"[1] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial

---

[1] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

motivating factor in the defendants' conduct.[2] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The facts alleged by Brown fail to state the required elements of a First Amendment retaliation claim. With respect to the first element, Brown does not set forth any allegations that he was engaged in a constitutionally protected activity. Moreover, assuming without deciding that placement in the IMU is a sufficient "adverse action" to support a First Amendment retaliation claim, Brown fails to allege any facts that plausibly infer that his unidentified constitutionally protected conduct was a substantial or motivating factor in the decision to move him. Thus, the third element of a retaliation claim is also lacking.

Because Brown fails to state a First Amendment retaliation claim arising out of his transfer to the IMU, this claim is subject to dismissal. The court will grant Brown leave to amend his First Amendment retaliation claim.

D.   Claims against McClelland, Spieles, and Kalsky

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

---

[2] The third element, causation, requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997).

law." West v. Atkins, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Id. at 1207.

Brown's claims against Correctional Officer McClelland, Unit Manager Spieles, and PSS Kalsky are not plausible. Brown never alleges each defendant's personal role in the alleged harm. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting Rode,

13

845 F.2d at 1207)). Brown only broadly alleges that all defendants—including McClelland, Spieles, and Kalsky—are aware of the effects of long-term solitary confinement on mental health patients. (Doc. 1 ¶¶ 24, 26, 28). Such a sweeping allegation, without *any* further allegations against these three defendants, is insufficient to establish their personal involvement in the alleged harm. Under the most liberal construction, Brown's complaint fails to state a claim for relief against these three defendants. Based upon the above legal standards, it is clear that the claims against McClelland, Spieles, and Kalsky are subject to dismissal based on Brown's failure to set forth any factual allegations against them. Without such factual allegations, it is impossible to conclude that McClelland, Spieles, and Kalsky deprived Brown of his constitutional rights. See Hudson v. City of McKeesport, 244 F. App'x 519, 522 (3d Cir. 2007) (not precedential) (affirming dismissal of defendant because complaint did not provide any basis for a claim against him).

Additionally, to the extent that Brown seeks to hold McClelland, Spieles, and Kalsky liable based on their supervisory roles, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See Rode, 845 F.2d at 1207. Accordingly, insofar as Brown's claims against McClelland, Spieles, and

Kalsky rely on a *respondeat superior* theory of liability, these claims are also subject to dismissal.

Brown has not stated a claim against McClelland, Spieles, and Kalsky and the claims against them must be dismissed. However, Brown will be granted the option of filing an amended complaint to attempt to cure the defects discussed above.

### IV. Conclusion

Consistent with the foregoing, the court will grant defendants' motion (Doc. 15) and dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1). The court will allow Brown leave to file one all-inclusive amended complaint. See Grayson, 293 F.3d 103, 114 (3d Cir. 2002). Should Brown choose not to file an amended complaint, the court will reinstate the original complaint and this action shall proceed on the Eighth Amendment claim against defendants Harry, Wenerowicz, and Gourley.

A separate Order shall issue.

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

Dated: June 18, 2025